## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## TRENTON DIVISION

| | |
|---|---|
| JOEL MERKIN, individually and on behalf of others similarly situated, <br><br><br> Plaintiff, <br><br> vs. <br><br> HONDA NORTH AMERICA, INC., AMERICAN HONDA MOTOR CO., INC., and HONDA MOTOR COMPANY, LTD., <br><br> Defendants. | No. <br><br><br> **CLASS ACTION** <br><br><br><br> **JURY TRIAL DEMANDED** |

## **PLAINTIFF'S CLASS ACTION COMPLAINT**

Plaintiff Joel Merkin brings this action against Defendants Honda North America, Inc. ("Honda North America"), American Honda Motor Co., Inc. ("American Honda"), and Honda Motor Company, Ltd. ("Honda Motor Company") (collectively "Defendants" or "Honda"), by and through his attorneys, individually and behalf of all others similarly situated, and alleges as follows:

### **INTRODUCTION**

1.      This is a class action lawsuit brought by Plaintiff on behalf of himself and a class of current and former Honda vehicle owners and lessees with defective engine starting systems in model years ("MY") 2013-15 Honda Accord and 2013-

15 Honda Crosstour vehicles (the "Class Vehicles" or "Vehicles").[1] As discussed in more detail below, the engine starter (or "starter motor") is an essential component of a vehicle that spins the engine when the start position is engaged by the ignition system.  This allows the vehicle's engine to "start" and begin running.

2.      This action arises from Defendants' failure, despite their longstanding knowledge of this material and manufacturing defect, to disclose to Plaintiff and other consumers that the Class Vehicles are predisposed to a starter system defect (collectively, the "Starter Defect"). This defect – which typically manifests during and shortly after the limited warranty period has expired – will inevitably cause the starter motors and batteries in the Class Vehicles to prematurely fail. Once the starter motors and batteries fail to operate correctly, the engines in the Class Vehicles will not start, leaving operators and passengers stranded.

3.      Significantly, the Class Vehicles are rendered inoperable when the Starter Defect manifests. As alleged herein, the Class Members' vehicles completely fail to start due to the Starter Defect since the vehicle's engine cannot properly turn over in a manner as required to start the vehicle. This causes the operator and

_____

[1] Plaintiff reserves the right to amend or add to the vehicle models included in the definition of Class Vehicles after conducting discovery.

passengers to become stranded and often requires the vehicle to be towed to the nearest service provider, all at the consumer's expense.

4.     Not only did Honda actively conceal the fact that particular components within the starter system were not assembled and manufactured correctly (and require costly repairs to fix), they did not reveal that the existence of this defect would diminish the intrinsic and resale value of the Class Vehicles.

5.     Honda has long been aware of the Starter Defect. Despite its longstanding knowledge of this defect, Honda has routinely refused to repair the Class Vehicles without charge when the defect manifests.

6.     Many owners and lessees of Class Vehicles have communicated with Defendants' agents to request that Honda remedy and/or address the Starter Defect and/or resultant damage at no expense. Defendants have failed and/or refused to do so – often conveying to Vehicle owners that the failed parts comprising the Starter Defect are considered "maintenance," "wear," or "user induced" items and not covered under warranty.

7.     For customers whose vehicles are within the written warranty period (which extends for the shorter of 3 years or 36,000 miles), Honda has done nothing more than to temporarily repair the Starter Defect, or replace it with other similarly defective and inherently failure-prone starter motors, and/or force Class members to pay for repairing the Starter Defect. Honda has refused to take any action to

correct this concealed manufacturing defect when it manifests in vehicles outside of the warranty period. Since the Starter Defect typically manifests within and shortly outside of the warranty period for the Class Vehicles – and given Defendants' knowledge of this concealed design defect, unequal bargaining power, and other factors discussed below – Honda's attempt to limit the warranty with respect to the Starter Defect is unconscionable here.

8.      Despite notice and knowledge of the Starter Defect from the numerous consumer complaints it has received, information received from dealers, National Highway Traffic Safety Administration ("NHTSA") complaints, and its own internal records including the issuing of a corrective technical service bulletin, Honda has not recalled the Class Vehicles to repair the Starter Defect, offered its customers a suitable repair or replacement free of charge, or offered to reimburse its customers who have incurred out of pocket expenses to repair the defect.

9.      As a result of Defendants' unfair, deceptive and/or fraudulent business practices, owners and/or lessees of Class Vehicles, including Plaintiff, have suffered an ascertainable loss of money and/or property and/or loss in value. The unfair and deceptive trade practices committed by Defendants were conducted in a manner giving rise to substantial aggravating circumstances.

10.     Had Plaintiff and other Class members known about the Starter Defect at the time of purchase or lease, they would not have purchased or leased the Class

Vehicles, or would have paid substantially less for them.

11.    As a result of the Starter Defect and the considerable monetary costs associated with attempting to repair such defect, Plaintiff and Class members have suffered injury in fact, incurred damages and have otherwise been harmed by Honda's conduct.

12.    Accordingly, Plaintiff brings this action to redress Defendants' violations of the New Jersey Consumer Fraud Act, and also seek recovery for Defendants' breach of express warranty, breach of implied warranty, breach of the covenant of good faith and fair dealing, common law fraud and, alternatively, unjust enrichment.

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

14.    Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because Defendants transact business in this district, are subject to personal

jurisdiction in this district, and therefore are deemed to be citizens of this district.

Additionally, Defendants have advertised in this district and have received

substantial revenue and profits from their sales and/or leasing of Class Vehicles in

this district; therefore, a substantial part of the events and/or omissions giving rise

to the claims occurred, in part, within this district.

15.    This Court has personal jurisdiction over Defendants because they

have conducted substantial business in this judicial district, and intentionally and

purposefully placed Class Vehicles into the stream of commerce within the

districts of New Jersey and throughout the United States.

## THE PARTIES

### The Plaintiff

16.    Plaintiff Joel Merkin is a citizen of the State of New Jersey and

resides in Ocean County, New Jersey.

17.    In or around July 20, 2015, Plaintiff purchased a pre-owned 2013

Honda Accord EX-L, within the factory warranty period, from Honda of Toms

River, an authorized Honda dealer and repair center located in Toms River, New

Jersey.

18.    Plaintiff purchased (and still owns) this vehicle, which is used for

personal, family and/or household uses. His vehicle bears Vehicle Identification

Number: 1HGCR3F89DA022663.

19.    In or around May 2016, with approximately 40,400 miles on the

odometer, Plaintiff's vehicle would not start approximately once or twice a week.
After repeatedly trying to get his vehicle to start, it would eventually start after
attempting to turn over the engine multiple times.

20.    In or around July 2016, with approximately 58,430 miles on the
odometer, Plaintiff's vehicle would not start approximately five or six times a day.

21.    Thereafter, Plaintiff contacted Honda of Toms River regarding the
starting issues in his vehicle. The service advisor of Honda of Toms River advised
Plaintiff that his vehicle was no longer under warranty and he would be charged
the full price for replacement and diagnosis of the starter motor.

22.    Immediately thereafter, Plaintiff took his vehicle to Hamilton Honda
in Hamilton, New Jersey. Hamilton Honda diagnosed the starter motor as the
problem with Plaintiff's vehicle and agreed to replace the starter for approximately
$200.

23.    Plaintiff Merkin has suffered an ascertainable loss as a result of
Defendants' omissions and/or misrepresentations associated with the Starter
Defect, including, but not limited to, out of pocket loss associated with the Starter
Defect and future attempted repairs and diminished value of his vehicle.

24.    None of the Defendants, or any of their agents, dealers or other
representatives informed Plaintiff of the existence of the Starter Defect prior to

purchase.

## The Defendants

25.    Defendants Honda North America, American Honda, and Honda Motor Company are automobile design, manufacturing, distribution, and/or servicing corporations doing business within the United States. Furthermore, Defendants design, manufacture, distribute, market, service, repair, sell and lease passenger vehicles, including the Class Vehicles.

26.    Defendant Honda Motor Company, Ltd., 1-1, 2-chome, Minami-Aoyama, Minato-ku, Tokyo 107-8556, Japan is an automobile design, manufacturing, sale, leasing, distribution, and servicing corporation organized under the laws of Japan. Honda Motor Company is the parent corporation of American Honda and Honda North America.

27.    Honda North America has its principal place of business at 700 Van Ness Avenue, Torrance, California 90501-1486. American Honda has its principal place of business at 1919 Torrance Boulevard, Torrance, California 90501-2746.

28.    Upon information and belief, Defendant Honda Motor Company communicates with Defendants Honda North America and American Honda concerning virtually all aspects of the Honda products it distributes within the United States.

29.    Upon information and belief, the design, manufacture, distribution,

service, repair, modification, installation and decisions regarding the starter system within the Class Vehicles were performed exclusively by Defendants.

30.     Upon information and belief, Defendants develop the owner's manuals, warranty booklets and information included in maintenance recommendations and/or schedules for Class Vehicles.

31.     Defendants Honda North America, American Honda, and Honda Motor Company engage in continuous and substantial business in New Jersey.

## TOLLING OF STATUTES OF LIMITATION

32.     Any applicable statute(s) of limitations has been tolled by Defendants' knowing and active concealment and denial of the facts alleged herein. Plaintiff and members of the Class could not have reasonably discovered the true, latent defective nature of the Starter Defect until shortly before this class action litigation was commenced.

33.     Defendants were and remain under a continuing duty to disclose to Plaintiff and members of the Class the true character, quality and nature of the Class Vehicles and that it will require costly repairs, and diminishes the resale value of the Class Vehicles. As a result of the active concealment by Defendants, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## FACTUAL ALLEGATIONS

**A.    The Starter Defect within the Class Vehicles.**

34.    The Honda Accord was introduced in Japan in 1976 as a compact car. Introduced in the United States in 1982, the Honda Accord became one of the best-selling mid-to-full-size sedans in North America.

35.    Honda began designing the Honda Accord as a both a mid and full-size sedan starting with its Eight Generation in 2008. Its two-door model was classified as a mid-size car by Environmental Protection Agency standards, while its four-door sedan was considered a full-size sedan.

36.    The 2013-15 Honda Accords fall into the Ninth Generation of the Accord model. These Class Vehicles were available in the "LX" and "EX" trim styles and consumers could choose between a 2.4 (4 cylinder) or 3.5-liter (6 cylinder) engines.  Honda sold the 2013-15 Accords in both a two-door and four-door models.  Regardless of style, as to those vehicles with a V6 engine, Honda manufactured the 2013-15 Accords with the same starting system components.

37.    The Honda Crosstour is a full-size crossover SUV initially offered as a 2010 model year.  The Crosstour is a hatchback variation of the Honda Accord and both shared the same platform.  Additionally, the Crosstour is powered by the same 3.5-liter V6 engine as the 2013-15 Honda Accords with the V6 option.  Due to slow sales, the Crosstour was discontinued for the 2016 model year.  As to those

vehicles with a V6 engine, Honda manufactured the 2013-15 Crosstours and 2013-15 Accords with the same starting system components.

38.    A starter motor is an electric motor that turns over or "cranks" the vehicle's engine in order to start it.  The starter motor consists of a powerful DC (Direct Current) electric motor and a starter solenoid that is typically attached to the housing of the starter motor.  In order to operate correctly, the starter motor requires a significant amount of electrical current and is therefore powered by the vehicle's battery.

39.    The picture below exemplifies the internal components generally comprising a starter motor:



40.    In order to start the vehicle, the operator engages the starter motor by either inserting and turning a key or pressing the ignition switch.  In turn, this results in electrical contact with the starter motor.  To avoid any sparking, the current is sourced through the starter solenoid, which contains an electromagnet. The electromagnet attracts an iron rod and the movement of the rod completes the circuit between the battery and starter motor. When the ignition switch stops conducting the current through the solenoid, the contacts reopen and the starter motor stops spinning.

41.     The drive pinion of the starter motor, located on the right side of the above diagram, is comprised of a small gear that engages and turns the engine when the operator attempts to start the vehicle.  When an electrical circuit is formed with the starter motor, the drive pinion extends and engages the engines ring gear.  The drive pinion, driven by the internal DC motor, causes the engine's ring gear to spin. This action then rotates or "cranks" the vehicle's engine.

42.     As the engine rotates during the starting process, it will ultimately spin faster than the drive pinion of the starter motor.  Once this occurs, the drive pinion will retract and fall out of engagement with the engine's ring gear.  Once the engine of the vehicle is running under its own power, the starter motor is no longer needed.

43.     The Class Vehicles came standard with a traditional key start while certain more expensive trim styles added a push-button start mechanism. Regardless of these methods, all Class Vehicles are comprised of the same engine starting components and suffer from the Starter Defect.

44.     In February 2016, Honda issued a Technical Service Bulletin ("TSB") to address complaints of grinding or spinning noises at startup in the Class Vehicles (the "TSB 16-002").  TSBs are recommended repairs issued by the manufacturer and sent only to dealers.  TSBs are often issued when a manufacturer receives widespread reports of a particular problem in its vehicles.

45.    Honda's TSB 16-002 acknowledged that the Class Vehicles were manufactured with "not optimal" clearance between the starter motor and the torque converter ring gear.  As a result, TSB 16-002 explains that the corrective action needed for this clearance issue is the replacement of the starter and to also reposition the torque converter on the ring gear.  As expressed in the TSB, "the normal warranty applies" which means those who are outside of the normal warranty are forced to pay for the necessary corrective repair.

46.    However, TSB 16-002 fails to explain that when the clearance between the starter motor and the torque converter ring gear is "not optimal", it results in damage and premature wear to the drive pinion of the starter motor.  As a result, the starter motor must be removed and a new starter motor must be installed with corrected clearance between the drive pinion and ring gear in order to prevent further future damage.

47.    All Class Vehicles were manufactured with the incorrect clearance as referenced in TSB 16-002 and therefore all Class Vehicles, at a minimum, require the replacement of the original starter motors with new starter motors, installed with corrected clearances in order to prevent repeated damage.  If these replacements are not made then the original starter motors are destined to prematurely fail due to incorrect clearances at the time of manufacturing.

48.    The aforementioned TSB was issued only to authorized Honda dealers and was never issued to the general public or to the owners or lessees of the Class Vehicles.

49.    Furthermore, Honda's failure to notify the general public or the owners or lessees of the Class Vehicles of the Starter Defect is particularly egregious because after the Starter Defect manifests, owners or lessees of the Class Vehicles may be left stranded, placing the driver and occupants at an increased risk of injury.

50.    Despite Honda's acknowledgement of the Starter Defect, Honda has declined to extend goodwill coverage to those owners and lessees of the Class Vehicles who experienced the Starter Defect after the Honda Warranty has expired.

51.    Starter systems are designed to function for periods (and mileages) substantially in excess of those specified in Defendants' warranties, and given past experience, consumers legitimately expect to enjoy the use of an automobile without worry that the starter system will fail for significantly longer than the limited times and mileages identified in Defendants' warranties.

52.    Automobiles must incorporate designs that are able to withstand foreseeable usage conditions such as starting the vehicle on a daily basis. A vehicle can suffer extensive damage and costly repairs from customary environmental and

usage conditions when a vehicle suffers from such a defect.

53.     The Class Vehicles were manufactured with an insufficient starter system. This defect causes the Class Vehicles to be unable to start and/or premature failure of the starter system components including the starter motor and battery.

54.     Specifically, the Class Vehicles were manufactured with defective starting systems that contain incorrect clearances between the starter motors and torque converter ring gears.  These incorrect clearances cause damage and premature wear to the drive pinion of the starter motor because the drive pinion is unable to properly engage the torque converter ring gear.  As a result, the starter motor must be removed and a new starter motor must be installed with corrected clearance between the starter motor drive pinion and torque converter ring. If the Starter Defect manifests, owners or lessees of the Class Vehicles may be left stranded, placing the driver and occupants at an increased risk of injury.

55.     In many instances, consumers have incurred and will continue to incur expenses for repair and/or replacement of the starter despite such defect having been contained in the Class Vehicles when manufactured by Defendants.

56.     Upon information and belief, Defendants, through (1) their own records of customers' complaints, (2) dealership repair records, (3) records from the National Highway Traffic Safety Administration (NHTSA), (4) warranty and post-warranty claims, (5) internal durability testing and TSBs, and (5) other

various sources, were well aware of the Starter Defect but failed to notify customers of the nature and extent of the problems with Class Vehicle starters or provide any adequate remedy.

57. Defendants failed to adequately research, design, test and/or manufacture the starting systems in the Class Vehicles before warranting, advertising, promoting, marketing, and selling the Class Vehicles as suitable and safe for use in an intended and/or reasonably foreseeable manner.

58. Defendants expressly warranted the affected vehicles to be free from defects for a period of 3 years or 36,000 miles.

59. Buyers, lessees, and other owners of the affected Vehicles were without access to the information concealed by Defendants as described herein, and therefore reasonably relied on Defendants' representations and warranties regarding the quality, durability, and other material characteristics of the Vehicles. Had these buyers and lessees known of the defect and the potential harm, they would have taken steps to avoid that harm and/or would have paid less for the Vehicles than the amounts they actually paid, or would not have purchased the Vehicles.

**B.    Complaints by Other Class Members.**

60. Plaintiff's experience is by no means an isolated or outlying occurrence. Indeed, the internet is replete with examples of blogs and other

websites where consumers have complained of the exact same Starter Defect within the Class Vehicles.[2]

61.    Owners of Honda Accord and Crosstour models have publicly complained to the United States government about the Starter Defect in Class Vehicles since the vehicle has been released. The Office of Defects Investigation (ODI) is an office within the National Highway Traffic Safety Administration (NHTSA). ODI conducts defect investigations and administers safety recalls to support the NHTSA's mission to improve safety on the Nation's highways. The following are just a small sampling of the many complaints submitted to ODI by Honda Accord owners. These publicly available complaints, filed as early as 2013, evidence Defendants' prior knowledge of the Starter Defect, the negative experiences encountered by Class Members, and the financial burden this places on them.

**NHTSA ID Number:** 10532062
**Incident Date** July 25, 2013
**Consumer Location** LONG BEACH, CA
**Vehicle Identification Number** N/A
WHEN I START UP THE CAR IT WOULDN'T START. THE LIGHT, ACC, RADIO EVERYTHING TURNS ON BUT THE ENGINE WONT START. I TRY SEVERAL TIMES BUT IT WILL NOT START, I GOT OUT THE CAR LOCK IT, THEM I DECIDE TO TRY AGAIN AND THEM IT STARTED. I

---

[2] *See* https://community.cartalk.com/t/honda-push-button-start-problem/93258; http://www.driveaccord.net/forums/86-9th-generation/382202-2013-honda-accord-coupe-v6-ex-l-ignition-starter-issues.html; and https://www.youtube.com/watch?v=ES6-c0C8S98.

BOUGHT THE CAR IN MAY 2013 THIS IS THE 3RD TIME IT HAPPEN SAME EXACT WAY. ALSO A BUZZING NOISE COMING FROM THE RADIO OR BLUETOOTH. I TOOK IT TO THE DEALER THEY COULD NOT FOUND ANYTHING WRONG WITH IT. THE BATTERY WAS FINE ACCORDING TO THE DEALER. *TR

**DATE OF INCIDENT:** January 24, 2014
**DATE COMPLAINT FILED:** January 24, 2014
**NHTSA/ODI ID:** 10561325
**MODEL:** 2013 Honda Accord
**SUMMARY:**
VEHICLE DOES NOT START EASILY. 3-5 IGNITION ATTEMPTS ARE NEEDED TO START IT EVERY TIME. HOWEVER, ONCE IT STARTS EVERYTHING SEEMS FINE. THE BATTERY WAS CHECKED BY THE DEALER AND FOUND TO BE FINE. THE PROBLEM IS NOT COLD RELATED AS IT OCCURS EVEN AT 40 F. *TR

**DATE OF INCIDENT**: May 28, 2014
**DATE COMPLAINT FILED:** May 29, 2014
**NHTSA/ODI ID:** 10594959
**MODEL:** 2013 Honda Accord
**SUMMARY:**
WENT TO START THE CAR, THE CAR WILL NOT TURN ON, EVERYTHING WORKS BUT CAR WON'T START.

SEEMS TO BE A PROBLEM WITH THE STARTER. *TR

**NHTSA ID Number:** 10747988
**Incident Date** July 20, 2015
**Consumer Location** FAIRFAX, VA
**Vehicle Identification Number** 1HGCR2F59DA****
I HAVE A HONDA ACCORD 2013 (JUST 2 YEARS OLD) WITH 59209 MILES ON IT.

CAR SOMETIMES CLICKS AND WILL NOT START. SOMETIME IT WILL START AFTER ABOUT 5 TO 10 TRIES, OR WAITING FOR A WHILE. SOMETIMES THE CAR STARTS FINE ON THE FIRST TRY. I TALKED TO HONDA OF AMERICA ON 7/20/2015 AND THEY SAID IT MIGHT BE THE STARTER OR IGNITION GOING BAD AND SHOULD BE COVERED UNDER THE 5 YEAR/60K POWER TRAIN WARRANTY. I TOOK IT TO THE DEALER YESTERDAY AND THEY DIAGNOSED IT

TO THE STARTER MOTOR AND REPLACED IT AND SAID THAT IT IS
NOT COVERED UNDER THE POWER TRAIN WARRANTY. I THEN
TALKED TO HONDA AND THEY SAID THAT THEY ARE SORRY FOR
THE MISINFORMATION I RECEIVED AND IT IS NOT COVERED
UNDER THE POWER TRAIN WARRANTY. THE NEW CAR WARRANTY
IS COVERED ONLY BY THE 3 YR/36K WHICH EVER COMES FIRST.
THE CAR IS ONLY 2 YEARS OLD AND THE STARTER MOTOR
SHOULDN'T GO BAD.

**DATE OF INCIDENT:** March 12, 2016
**DATE COMPLAINT FILED:** March 14, 2016
**NHTSA/ODI ID:** 10846472
**MODEL:** 2013 Honda Accord
**SUMMARY:**
A FEW MONTHS AGO, MY 2013 HONDA ACCORD SPORT WITH
42K MILES BECAME HESITANT TO START. A TURN OF THE
KEY AND I JUST HEARD CLICKS , AFTER 3-5 TRIES IT
USUALLY STARTED ON UP. THE PROBLEM PROGRESSED, YET
I CONTINUED TO "MAKE DUE", I STARTED PUTTING THE CAR
IN NEUTRAL TO START IT, AND EVEN HAD TO BE JUMPED OFF
A FEW TIMES. EVENTUALLY IN EARLY FEBRUARY MY
BATTERY WENT BAD, AND I PURCHASED A NEW ONE. ON
MARCH 12,2016 MY CAR REFUSED TO START. I HAD TO HAVE
IT TOWED TO THE DEALERSHIP I PURCHASED THE CAR FROM
- IN 2013 WITH 18 MILES ON IT...ON 3/14/16 I WAS JUST
INFORMED THAT MY STARTER IS BAD. TO REPLACE THE
STARTER IT WILL BE $850....NOT INCLUDING THE
DIAGNOSTIC FEE OF $110 AND THE TOWING COST OF $80, ALL
BECAUSE THIS DOESN'T FALL UNDER THE 3/36K WARRANTY
THAT IS STANDARD WITH HONDA. . . .

**DATE OF INCIDENT:** March 26, 2016
**DATE COMPLAINT FILED:** March 28, 2016
**NHTSA/ODI ID:** 10851951
**MODEL:** 2013 Honda Accord
**SUMMARY:**
I PARKED MY CAR IN OUR HOME GARAGE AFTER DRIVING 15-20
MILES. AN HOUR LATER, WHEN I TRIED TO TAKE THE CAR OUT, AT
IGNITION IT JUST REFUSED TO START. I GOT MANY DASHBOARD
CHATTERING INDICATORS ON BUT NO ENGINE CRANKING. TRIED

COUPLE OF TIMES BUT SAME RESULTS. CHECKED HEAD LIGHTS AND FOUND THEM BRIGHT AND OK INDICATING NO POSSIBLE BATTERY ISSUE. THEN I JUMP STARTED FROM OUR OTHER CAR PARKED NEXT TO IT. IT STARTED ALMOST IMMEDIATELY. BUT THE DASHBOARD INDICATORS REMAINED 'ON'. I USED VEHICLE SETTING MENU AND SELECTED FACTORY DEFAULT RESET. BUT THE INDICATORS REMAINED 'ON'. I TOOK THE CAR FOR A SHORT DRIVE. AS SOON AS I DROVE SOME 15-20 FEET, THE INDICATORS WENT OFF. I DROVE FOR SOME TIME AND TRIED TO STOP THE ENGINE AND RESTART IT COUPLE TIMES WITHOUT ANY PROBLEMS. IN MY CASE, I WAS FORTUNATE TO HAVE THIS HAPPENED AT HOME GARAGE AND NOT MIDDLE OF THE ROAD.

BUT WHEN I TRIED TO RESEARCH ONLINE ABOUT THIS PROBLEM, I FOUND MANY SUCH SIMILAR COMPLAINTS AND SOME OF THEM WERE INDICATING POSSIBLE 'BAD' STARTER ISSUE WHICH REQUIRED $800-1000 FOR THE REPLACEMENT AND REPAIRS. MY CAR IS AROUND 18 MONTHS OLD WITH CLEAN RECORDS OF REGULAR MAINTENANCE. THE CAR HAS LOGGED AROUND 32,400 MILES AND MAINTAINED WITH CARE. AS A CONCERNED OWNER, AFTER READING THOSE ONLINE COMPLAINTS AND REPORTS, I THOUGHT OF SHARING MY ISSUE HERE AND RECORD IT TOO. I SEE THERE ARE ENOUGH SIMILAR COMPLAINTS TO ARRIVE AT THERE COULD BE A FAULTY COMPONENT (MAY BE STARTER OR SOMETHING ELSE, I AM NOT AN EXPERT) WHICH MIGHT NEED ATTENTION AND POSSIBLE RECALL REPAIRS BY THE MANUFACTURER

**NHTSA ID NUMBER:** 10861014
**INCIDENT DATE** APRIL 10, 2016
**CONSUMER LOCATION** ACCOKEEK, MD
**VEHICLE IDENTIFICATION NUMBER** 1HGCR2F55DA****
MY FAMILY AND I WERE STRANDED DUE TO OUR 2013 HONDA ACCORD NOT STARTING. WE JUST CAME OUT OF THE MOVIES AND THE CAR WAS STATIONARY IN THE PARKING LOT. I TURNED THE KEY AND IT WOULD JUST CLICK. I HAD TO PAY FOR TOWING AND OVER $800 TO HAVE THE STARTER REPLACED AT THE HONDA DEALER. IT WOULD HAVE BEEN MORE, BUT I CALLED ANOTHER DEALER AND THEY PRICE MATCHED THE STARTER. I DRIVE A LOT

OF MILE TO WORK SO I HAVE OVER 60K MILES IN 2 YEARS. AFTER
DOING A LITTLE RESEARCH I FOUND THAT THIS PROBLEM IS
HAPPENING TO A LOT OF PEOPLE. THE PROBLEM CAN BE SEEN ON
FORUMS AND YOUTUBE VIDEOS. THIS PROBLEM SEEMS TO
AFFECTS NEW CARS, BASE MODELS, PUSH BUTTONS, V6'S ETC.

I THINK THE STARTER SHOULD BE RECALLED BECAUSE MANY
PEOPLE ARE BEING FORCED TO REPLACE STARTERS THAT THE
DEALER SEEMED TO KNOW WAS BAD.

**DATE OF INCIDENT:** May 10, 2016
**DATE COMPLAINT FILED:** May 24, 2016
**NHTSA/ODI ID:** 10870690
**MODEL:** 2013 Honda Accord
**SUMMARY:**
2013 ACCORD HAVING ISSUES STARTING, TURN ONCE NOTHING, I
GIVE IT A MINUTE THEN IT STARTS, THIS IS EVERY TIME I GET IN
MY CAR TO DRIVE. I'VE ALREADY HAD TO REPLACE BATTERY.
THIS IS EMBARRASSING CONSIDERING THE CAR IS NOT YET 3
YEARS OLD!

**DATE OF INCIDENT:** August 2, 2016
**DATE COMPLAINT FILED:** August 2, 2016
**NHTSA/ODI ID:** 10892545
**MODEL:** 2013 Honda Accord
**SUMMARY:**
I HAVE OWNED MY 2013 HONDA ACCORD SINCE 2013. I HAVE HAD
NUMEROUS PROBLEMS WITH THIS MODEL. THE MOST BEING WITH
THE CAR STARTING. I HAVE REPLACED THE BATTERY AND THE
STARTER AND AM STILL HAVING PROBLEMS STARTING THE CAR. I
WENT ONLINE AND NOTICED THAT THIS IS A HUGE PROBLEM
WITH THIS MODEL. TH CAR MAKES A CLICKING NOISE AS IF IT IS
GOING TO START THEN IT DOESN'T START. ALL THE LIGHTS COME
ON AND IT THEN BEGINS TO START AFTER A COUPLE OF MINUTES
HAVE GONE BY. PUSHING THE BUTTON DOES NOT GET THE CAR
TO START. YOU HAVE TO PUSH IT NUMEROUS TIMES TO GET IT TO
START. THIS PROBLEM HAS COST ME UPWARDS OF $700 TO $1,000
TO REPLACE EVERY TIME THERE IS AN ISSUE. THIS SHOULD BE A

MANUFACTURERS ISSUE AS A STARTER SHOULD NOT BE WORN OUT IN 3 YEARS. . . .

**DATE OF INCIDENT:** August 11, 2016
**DATE COMPLAINT FILED:** August 12, 2016
**NHTSA/ODI ID:** 10895215
**MODEL:** 2004 Honda CR-V
**SUMMARY:**
I AM THE FIRST OWNER OF MY 2013 HONDA ACCORD SPORT AND 2 MONTHS AGO I DEVELOPED AN ISSUE WITH THE STARTER. I'VE REPLACED THE STARTER TWICE AND TONIGHT GOT STRANDED AND HAD TO CALL A TOW TRUCK TO BRING IT HOME**.** I'VE GONE TO THE HONDA DEALER AND, OF COURSE, THERE'S AN ISSUE WITH THE STARTER, BUT IT WILL COST $1000+ TO FIX! THIS ISSUE MUST BE INVESTIGATED AND RECALLED AS SOON AS POSSIBLE. HONDA IS FULLY AWARE OF ALL OF THESE ISSUES AND IF YOU GET THE RIGHT TECHNICIAN AT THE DEALERSHIP - THEY'LL TELL YOU HONDA IS FULLY AWARE, BUT COULDN'T CARE LESS! 2 STARTERS LATER - I'M STILL IN THE SAME POSITION!

**DATE OF INCIDENT:** August 19, 2016
**DATE COMPLAINT FILED:** September 6, 2016
**NHTSA/ODI ID:** 10903860
**MODEL:** 2013 Honda Accord
**SUMMARY:**
AFTER ONLY 40,000 MILES, 2013 V6 ACCORD, CAR STARTER GIVING PROBLEM. CAR DIDN'T START AT ONE POINT AND AFTER MANY TRIALS, STARTED WITH JUMP START AFTER THAT, STARTED GIVING JERK LIKE ENGINE STALLS DURING DRIVING. SCARY AND DANGEROUS SITUATION.

**DATE OF INCIDENT:** September 14, 2106
**DATE COMPLAINT FILED:** January 20, 2017
**NHTSA/ODI ID:** 10946576
**MODEL:** 2013 Honda Accord
**SUMMARY:**
THE STARTER ON THE 2013 HONDA ACCORD EX-L SEDAN BEGAN TO FAIL AT LESS THAN 50K MILES. IT BEGAN WITH THE SYMPTOMS OF NOT STARTING WITH THE FIRST PRESS ON THE PUSH BUTTON IGNITION, WHICH I WAS TOLD BY HONDA MAY JUST BE A FAULT OF MY OWN FOR NOT OPERATING THE PUSH BUTTON

SYSTEM CORRECTLY. THIS TURNED OUT TO BE INCORRECT AS
ONCE MY WARRANTY EXPIRED THE CAR STARTED TO REQUIRE
MORE AND MOST "PUSHES" TO START. EVENTUALLY I WAS LEFT
STRANDED AND THE CAR WOULD ON START AT ALL
IRRESPECTIVE OF THE NUMBER OF TIMES I TRIED. WHILE THIS
WAS NOT A SAFETY ISSUE WHERE I WAS STRANDED, IN OTHER
SITUATIONS THIS COULD HAVE EASILY RESULTED IN INJURY, OR
IN THE WORST CASE, THE LOSS OF LIFE.

**NHTSA ID NUMBER**: 10935428
**INCIDENT DATE:** September 30, 2016
**CONSUMER LOCATION**: CHICAGO, IL
**VEHICLE IDENTIFICATION NUMBER** 5J6TF2H55EL\*\*\*\*
**SUMMARY**
TL\* THE CONTACT OWNS A 2014 HONDA CROSSTOUR. WHEN
ATTEMPTING TO START THE VEHICLE, IT FAILED TO START ON
THE FIRST ATTEMPT. IT TOOK APPROXIMATELY 2-5 ATTEMPTS
BEFORE THE VEHICLE WOULD START. THE DEALER WAS UNABLE
TO DIAGNOSE THE CAUSE OF THE FAILURE; HOWEVER, THE
FAILURE RECURRED. THE CONTACT TOOK THE VEHICLE TO THE
DEALER A SECOND TIME AND THE CONTACT WAS INFORMED
THAT A NEW BATTERY WAS NEEDED. THE BATTERY WAS
REPLACED, BUT THE FAILURE RECURRED. THE MANUFACTURER
WAS MADE AWARE OF THE FAILURE. THE APPROXIMATE FAILURE
MILEAGE WAS 35,500.

**DATE OF INCIDENT:** December 14, 2016
**DATE COMPLAINT FILED:** December 14, 2016
**NHTSA/ODI ID:** 10935288
**MODEL:** 2013 Honda Accord
**SUMMARY:**
2013 HONDA ACCORD WON'T START. LIGHTS, A/C, RADIO,
WINDOWS WORK. THIS OCCURRED AFTER 50,000 MILES. I WOULD

HAVE TO TURN STEERING COLUMN AT FIRST TO GET IT TO START. NOW IT DOESN'T START AT ALL! THE VEHICLE IS STATIONARY

**DATE OF INCIDENT:** April 1, 2017
**DATE COMPLAINT FILED:** April 3, 2017
**NHTSA/ODI ID:** 10970173
**MODEL:** 2013 Honda Accord
**SUMMARY:**
FOR THE LAST YEAR, THE CAR HAS BEEN UNABLE TO START AFTER PARKING IT FOR A FEW MINUTES. USUALLY AFTER A FEW KEY TURNS IT WILL START. A MONTH AGO IT WOULD NOT START AT ALL SO WE TOWED IT. THE DEALERSHIP DECIDED IT WAS THE STARTER. AFTER 37,000 MILES? IT'S A HONDA! IT WORKED FINE FOR 5 WEEKS AND THEN IT DIED AGAIN AFTER BEING DRIVEN JUST A FEW MILES. THIS TIME THE DASH LIGHTS FLASHED AND CLICKED FOR A FEW MINUTES BUT WOULD NOT START. AFTER TOWING IT, THE DEALERSHIP HOOKED IT UP TO A JUMPSTART AND IT STARTED! THREE LIGHTS CONTINUED TO FLASH SO THE DEALERSHIP HOOKED IT UP TO THE COMPUTER. I CALLED THEM A COUPLE DAYS LATER AND THEY HAVE NO ANSWERS. I HATE LETTING MY WIFE DRIVE AN UNRELIABLE VEHICLE.

## CLASS ACTION ALLEGATIONS

62.    Plaintiff brings this action on his own behalf, and on behalf of the

following Class pursuant to FED. R. CIV. P. 23(a), 23(b)(2), and/or 23(b)(3).

Specifically, the Class consists of the following:

**New Jersey Class:**
All persons or entities in New Jersey who are current or former owners
and/or lessees of a Class Vehicle.

63.    Excluded from the Class are Defendants, their affiliates, employees,

officers and directors, persons or entities that purchased the Class Vehicles for

resale, and the Judge(s) assigned to this case.  Plaintiff reserves the right to modify,

change or expand the Class definition.

64.    <u>Numerosity</u>: Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Defendants and obtainable by Plaintiff only through the discovery process, Plaintiff believes that thousands of Class Vehicles have been sold and leased in each of the states that are the subject of the Class.

65.    <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

    a.  whether the starting systems in the Class Vehicles are predisposed to premature failure;

    b.  whether the starting systems in the Class Vehicles contain a manufacturing or other defect;

    c.  whether the defective starting system is common to all or some of the Class Vehicles;

    d.  if so, whether the Starter Defect causes starting systems to fail in the Class Vehicles;

    e.  whether Defendants knowingly failed to disclose the existence and

cause of the Starter Defect in Class Vehicles;

    f.  whether Defendants' conduct violates the New Jersey Consumer

        Fraud Act;

    g.  whether, as a result of Defendants' omissions and/or

        misrepresentations of material facts related to the Starter Defect,

        Plaintiff and members of the Class have suffered ascertainable loss of

        monies and/or property and/or value; and

    h.  whether Plaintiff and Class members are entitled to monetary

        damages and/or other remedies and, if so, the nature of any such

        relief.

66.  <u>Typicality</u>: All of the Plaintiff's claims are typical of the claims of the Class since Plaintiff purchased a Class Vehicle with a Starter Defect and defective vehicle design, as did each member of the Class. Furthermore, Plaintiff and all members of the Class sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendants' wrongful conduct. Plaintiff is advancing the same claims and legal theories on behalf of himself and all absent Class members.

67.  <u>Adequacy</u>: Plaintiff is an adequate representative because his interests do not conflict with the interests of the Class that he seeks to represent, he has retained counsel competent and highly experienced in complex class action

litigation, and they intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

68.    Superiority: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for members of the Class to individually and effectively redress the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation also increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Class can be readily identified and notified based on, *inter alia*, Defendants' vehicle identification numbers (VINs), warranty claims, registration records, and the database of complaints.

69.    Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with

respect to the Class as a whole.

## VIOLATIONS ALLEGED

### COUNT I
### VIOLATION OF THE NJCFA
### (On Behalf of the New Jersey Class)

70.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

71.    The New Jersey Consumer Fraud Act ("NJCFA") protects consumers against "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . ." N.J. Stat. Ann. § 56:8-2.

72.    Plaintiff and members of the Class are consumers who purchased and/or leased Class Vehicles for personal, family or household use.

73.    Defendants engaged in unlawful conduct in violation of the NJCFA by making knowing and intentional omissions. Defendants knowingly failed to disclose the manufacturing defect in the Class Vehicles in order to secure the sale of these vehicles, and to offer them at a premium price.

74.    Furthermore, when the starting systems in the Class Vehicles fail to function properly and require repair, Defendants also do not reveal to Class

members that such premature starting system failure is the result of a manufacturing defect actually caused by Defendants. Instead, Class members are forced to pay out of pocket for starting system repairs necessitated by Defendants' manufacturing errors.

75.    Defendants did not fully and truthfully disclose to its customers the true nature of the inherent defect with the starter systems, which was not readily discoverable until years later, often after the warranty has expired. As a result, Plaintiff and the other Class members were fraudulently induced to lease and/or purchase the Class Vehicles with the said Starter Defect and all of the resultant problems. These facts that Defendants concealed were solely within their possession.

76.    Defendants intended that Plaintiff and all Class members rely on the acts of concealment and omissions, so that they would purchase the Class Vehicles.

77.    Defendants' conduct caused Plaintiff and Class members to suffer an ascertainable loss. In addition to direct monetary losses, Plaintiff and Class members have suffered an ascertainable loss by receiving less than what was promised.

78.    A causal relationship exists between Defendants' unlawful conduct and the ascertainable losses suffered by Plaintiff and the Class. Had the Starter

Defect in the Class Vehicles been disclosed, consumers would not have purchased them or would have paid less for the Class Vehicles had they decided to purchase them.

## COUNT II
## BREACH OF EXPRESS WARRANTY

79.     Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

80.     Defendants expressly warranted that the Class Vehicles were of high quality and, at a minimum, would actually work properly. Defendants also expressly warranted that they would repair and/or replace defects in material and/or workmanship free of charge that occurred during the new vehicle and certified pre-owned ("CPO") warranty periods.

81.     Defendants breached this warranty by selling to Plaintiff and Class members the Class Vehicles with known starter system problems, which is not of high quality, and which fails prematurely and/or fails to function properly.

82.     As a result of the Defendants' actions, Plaintiff and Class members have suffered economic damages including but not limited to costly repairs, loss of vehicle use, substantial loss in value and resale value of the vehicles, and other related damage.

83.     Defendants' attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances

here. Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold a defective product without informing consumers about the manufacturing defect.  Furthermore, Defendants continue to charge Class members for repairing the defective starting systems when in fact such repairs are actually necessitated because of Defendants' manufacturing errors.

84.    The time limits contained in Defendants' warranty period were also unconscionable and inadequate to protect Plaintiff and members of the Class. Among other things, Plaintiff and Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Honda and Class members, and Honda knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives.

85.    Plaintiff and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

## COUNT III
## BREACH OF IMPLIED WARRANTY

86.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

87.    A warranty that the Class Vehicles were in merchantable condition is

implied by law.

88.    These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Class Vehicles are inherently defective in that there are defects in the Class Vehicles' starter systems, which are not of high quality, and which fail prematurely and/or fail to function properly.

89.    Defendants were provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiff and other Class members.

90.    As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

## COUNT IV
## COMMON LAW FRAUD

91.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

92.    Defendants made material omissions concerning a presently existing or past fact. For example, Defendants did not fully and truthfully disclose to its customers the true nature of the inherent design defect with the starting systems, which was not readily discoverable until years later, often after the warranty has expired. As a result, Plaintiff and the other Class members were fraudulently

induced to lease and/or purchase the Class Vehicles with the said defects and all of the resultant problems.

93.    These omissions were made by Defendants with knowledge of their falsity, and with the intent that Plaintiff and Class members rely upon them.

94.    Plaintiff and Class members reasonably relied on these omissions, and suffered damages as a result.

**COUNT V**
**BREACH OF THE DUTY OF GOOD FAITH**
**AND FAIR DEALING**

95.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

96.    Every contract in New Jersey contains an implied covenant of good faith and fair dealing. The implied covenant of good faith and fair dealing is an independent duty and may be breached even if there is no breach of a contract's express terms.

97.    Defendants breached the covenant of good faith and fair dealing through malicious conduct by, *inter alia*, failing to notify Plaintiff and Class members of the Starter Defect in the Class Vehicles, and failing to fully and properly repair this defect.

98.    Defendants acted in bad faith and/or with a malicious motive to deny Plaintiff and Class members some benefit of the bargain originally intended by the

parties, thereby causing them injuries in an amount to be determined at trial.

## COUNT XI
## UNJUST ENRICHMENT

99.    Plaintiff and the Class incorporate the foregoing allegations. This count is pled in the alternative to the contract based claims.

100.   Plaintiff and members of the Class conferred a benefit on Defendants.

101.   Defendants had knowledge that this benefit was conferred upon them.

102.   Defendants have been and continue to be unjustly enriched at the expense of Plaintiff, and their retention of this benefit under the circumstances would be inequitable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and members of the Class, respectfully requests that this Court:

A.    determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B.    appoint Plaintiff as the representative of the Class and his counsel as Class counsel;

C.    award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiff and Class members are entitled;

D.     award pre-judgment and post-judgment interest on such monetary relief;

E.     grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to repair, recall, and/or replace the Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiff and Class members with appropriate curative notice regarding the existence and cause of the design defect;

F.     award reasonable attorney's fees and costs; and

G.     grant such further relief that this Court deems appropriate.

Dated: May 24, 2017

Respectfully submitted,

By:    *//s// Matthew D. Schelkopf*
Joseph G. Sauder
Matthew D. Schelkopf
Joseph B. Kenney
McCUNE WRIGHT AREVALO LLP
555 Lancaster Avenue
Berwyn, PA 19312
Telephone: (610) 200-0581
E-mail: jgs@mccunewright.com
        mds@mccunewright.com
        jbk@mccuneright.com

*Attorneys for Plaintiff*