UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOEL MERKIN,<br><br>    *Plaintiff*,<br><br>v.<br><br>HONDA NORTH AMERICA, INC.,<br>AMERICAN HONDA MOTOR CO., INC., and<br>HONDA MOTOR COMPANY, LTD.,<br><br>    *Defendants*. | Civil Action No:<br>17-cv-03625 (PGS)(DEA)<br><br>**MEMORANDUM<br>AND<br>ORDER** |

  This matter comes before the Court on Defendants Honda North America, Inc., American Honda Motor Co., Inc., and Honda Motor Company, Ltd.'s (collectively, "Honda") Motion to Dismiss Plaintiff Joel Merkin's First Amended Complaint ("FAC") pursuant Fed. R. Civ. P. 12(b)(6) (ECF No. 16). Plaintiff asserts the following claims: (1) violation of the New Jersey Consumer Fraud Act; (2) breach of express warranty; (3) breach of implied warranty of merchantability; (4) common law fraud; (5) breach of the duty of good faith and fair dealing; and (6) unjust enrichment. For the reasons expressed herein, Honda's Motion to Dismiss is granted.

## BACKGROUND

  In this putative class action, Plaintiff Joel Merkin alleges that Honda failed to disclose alleged defects present in the starter motor of certain Honda vehicles. Plaintiff, a New Jersey citizen, seeks to certify a class of all New Jersey owners or lessees of 2013-2015 model year Honda Accord and Crosstour vehicles containing V6 engines ("Class Vehicles"). (FAC at ¶¶ 1, 16, 72).

  On July 20, 2015, Plaintiff purchased a pre-owned 2013 Honda Accord, purportedly within the New Vehicle Limited Warranty from a Honda dealership in Toms River, New Jersey. (*Id.* at ¶¶ 7, 17). The limited warranty extended coverage for the lesser of 3 years or 36,000 miles. (*Id.*

1

at ¶ 7). According to the FAC, in May 2016, with approximately 40,400 miles, Plaintiff began experiencing issues starting his vehicle. (*Id.* at ¶ 19). At least once or twice a week, Plaintiff's vehicle would not start immediately and would require him to turn the ignition "repeatedly" in order to start the engine. (*Id.*). Two months later, with an additional 18,000 miles, Plaintiff claims his vehicle would not start approximately five to six times a day. (*Id.* at ¶ 20). When he brought this issue to Honda of Toms River's attention, he was told that his vehicle was no longer under warranty and that he would be charged the full price for service and replacement of the defective starter motor ("starter"), and was charged $200 for a replacement. (*Id.* at ¶ 22).

Plaintiff alleges that Honda was aware of the starter defect, yet failed to make proper disclosures. (*Id.* at ¶ 2). Plaintiff alleges that the defect manifests during or shortly after the expiration of the limited warranty period. (*Id.*). As background, "[a] starter motor is an electric motor that turns over or 'cranks' the vehicle's engine in order to start it" (*Id.* at ¶ 39), and since the defective starters prematurely fail, the vehicle will not start. (*Id.* at ¶ 2).

In February 2016, Honda issued a Technical Service Bulletin ("TSB") to Honda dealers, which addressed "complaints of grinding or spinning noises at startup in the Class Vehicles." (*Id.* at ¶ 44). According to Plaintiff, the TSB "acknowledged that the Class Vehicles were manufactured with 'not optimal' clearance between the starter motor and the torque converter ring gear." (*Id.* at ¶ 45). Without proper clearance, these starters experienced premature wear, thereby causing significant damage, which required removal and replacement with a new starter with corrected clearance. (*Id.* at ¶¶ 45-47).

Although Honda was purportedly aware of the defect, it was never disclosed to the general public. (*Id.* at ¶ 48). Moreover, Plaintiff alleges that Honda actively concealed and refused to acknowledge the defect. (*Id.* at ¶¶ 56-65). In support of this assertion, Plaintiff relies generally on:

2

"(1) [Honda's] own record[] of customers' complaints, (2) dealership repair records, (3) records from the National Highway Traffic Safety Administration (NHTSA), (4) warranty and post-warranty claims, (5) internal presale durability testing and TSBs, and (6) other various sources." (*Id.* at ¶ 56). Given Honda's quality assurance efforts, Plaintiff claims "[Honda] knew or should have known that the starter system in the Class Vehicles was defective" and "expressly warranted the affected vehicles to be free from defects for a period of 3 years or 36,000 miles." (*Id.* at ¶¶ 65-66).

To illustrate Honda's purported awareness of the defective starters, Plaintiff cites to complaints made by Honda Accord owners to the NHTSA's Office of Defects Investigation (ODI). (*Id* at ¶¶ 70).[1] In a January 2014 complaint, a 2013 Honda Accord owner claimed, "Vehicle does not start easily. 3-5 ignition attempts are needed to start it every time. However, once it starts everything seems fine. The battery was checked by the dealer and found to be fine." (*Id.*) (capitalization omitted). In a similar entry, dated May 2014, another 2013 Honda Accord owner stated, "Went to start the car, the car will not turn on, everything works but the car won't start. Seems to be a problem with the starter." (*Id.*) (capitalization omitted). According to the FAC, "[a]ll automobile manufacturers routinely monitor and analyze NHTSA complaints because this information is used [for] determining if a recall should be issued." (*Id.* at ¶ 69).

Plaintiff brings six causes of action based on state law, on behalf of himself and the putative class. Specifically, he alleges violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-2; breach of express warranty; breach of implied warranty; breach of the duty of good faith and fair dealing; and unjust enrichment.

---

[1] The Court limits its focus to complaints made prior to July 2015, when Plaintiff purchased his pre-owned vehicle.

**LEGAL STANDARD**

On a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court is required to accept as true all allegations in the Complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 (3d Cir. 1994). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Iqbal*, 556 U.S. at 678-79; *see also Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir. 1997). A complaint should be dismissed only if the well-pleaded alleged facts, taken as true, fail to state a claim. *See In re Warfarin Sodium*, 214 F.3d 395, 397-98 (3d Cir. 2000).

For allegations sounding in fraud, Fed. R. Civ. P. 9(b) imposes a heightened pleading standard. "The purpose of Rule 9(b) is to provide notice of the precise misconduct with which defendants are charged in order to give them an opportunity to respond meaningfully to a complaint, Aand to prevent false or unsubstantiated charges." *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998) (citations omitted). "Under Rule 9(b), when a plaintiff is alleging fraud or mistake, he 'must state with particularity the circumstances constituting fraud or mistake,' though conditions of a person's mind, such as knowledge or intent, may be alleged generally." *Gotthelf v. Toyota Motor Sales, U.S.A., Inc.* 525 F. App'x 94, 103 n.15 (3d Cir. 2013) (quoting Fed. R. Civ. P. 9(b)). However, "when pleading knowledge, the complaint

4

must still contain more than a 'conclusory allegation,' and the pleading must meet the 'less rigid –though still operative—strictures of Rule 8.'" *Id.* (quoting *Iqbal*, 556 U.S. at 686-87)).

ANALYSIS

A.     Counts I and IV (Fraud Based Claims)

*1.     New Jersey Consumer Fraud Act (NJCFA)*

Plaintiff asserts causes of action under the NJCFA and common-law fraud. Honda seeks dismissal of these claims for failing to adequately plead that Honda engaged in unlawful conduct. Specifically, Honda contends that Plaintiffs have failed to allege that Honda knew of the defective starter at the time of Plaintiff's purchase. The Court agrees.

"To state a prima facie case under the CFA, a plaintiff must demonstrate three elements: (1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal connection between the defendant's unlawful conduct and the plaintiff's ascertainable loss." *Payan v. Greenpoint Mortg. Funding*, 681 F. Supp. 2d 564, 572 (D.N.J. 2010) (citing *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. Sup. Ct. 2009)). "An 'unlawful practice' may be an affirmative act, a knowing omission, or a regulatory violation." *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 524-25 (D.N.J. 2008); *see also* N.J.S.A. § 56-8.2. Since both parties' briefs focus on the first element of this cause of action, this Court limits its discussion only to the issue of whether Plaintiff has sufficiently alleged "unlawful conduct."

Plaintiff claims that the "unlawful practice" in which Honda was engaged was its knowing concealment of the defect in the starter motors. "To establish an act of omission under the NJCFA, 'plaintiff must show that defendant (1) knowingly concealed (2) a material fact (3) with the intention that plaintiff rely upon the concealment.'" *Harnish v. Widener Univ. Sch. of Law*, 931 F. Supp. 2d 641, 652 (D.N.J. 2013) (quoting *Judge v. Blackfin Yacht Corp.*, 815 A.2d 537, 541 (N.J.

Super. App. Ct. App. Div. 2003)). In establishing Honda's knowledge of the defect prior to his purchase, Plaintiff relies, among other things, on posts made to the NHTSA from other Class Vehicle owners who experienced similar issues. In several of these posts, made prior to Plaintiff's purchase, owners described problems with their engine not starting and potential starter issues. (FAC at ¶ 70). Plaintiff also alleges that Honda "routinely monitor and analyze NHTSA complaints because this information is used [to] determin[e] if a recall should be issued." (*Id.* at ¶ 69).

Relying on Judge Alreo's opinion in *Afzal v. BMW of N. Am., LLC*, No. 15-8009, 2017 U.S. Dist. LEXIS 118391, at *13-14 (D.N.J. July 27, 2017), Plaintiff contends the NHTSA posts cited in his Complaint sufficiently demonstrate that Honda was aware of the defect. However, *Afzal* is factually distinguishable from the present matter. In *Afzal*, the plaintiff relied on posts from an internet forum to support his assertion that BMW NA had knowledge of an engine defect. *Id.* at *11. In these posts, individuals reported that BMW NA identified the defects in their vehicles. *Id.* The plaintiff also alleged that "BMW NA employees 'were known to periodically review and monitor' the[se] message forums." *Id.* at *12. When taking into consideration "the totality of the allegations" the court concluded that there was enough pled to survive the defendant's motion. *Id.* at *13-14. Specifically, the court concluded, "the posts that Plaintiffs point to also identify specific instances where customers directly reported the problem to BMW NA, and BMW NA then diagnosed [the defect]." *Id.* at *14.

Here, Plaintiff only identifies two complaints made to the NHTSA prior to his purchase.[2] However, these complaints lack the specificity provided in *Afzal*. First, these posts do not report

---

[2] A third post is mentioned in the Complaint, however because it does not identify the make or model, the Court does not consider it.

to have had their vehicles diagnosed starter problems. Second, and more importantly, neither post claimed to have directly reported their problem to Honda or that Honda diagnosed their vehicles as having the starter defect. Simply put, even when taking into consideration the "totality of the allegations" the Court is unable to reasonably infer that Honda had knowledge of the defect prior to Plaintiff's purchase.

Finally, Plaintiff's arguments that Honda's TSB and quality assurance metrics further demonstrate its knowledge do not compel a different result. Under Rule 9(b), a plaintiff "must plead with particularity the 'circumstances' of the alleged fraud." *Rolo*, 155 F.3d at 658. "The purpose of Rule 9(b) is to provide notice of the 'precise misconduct' with which defendants are charged and to prevent false or unsubstantiated charges." *Id.* (citation omitted). However, where the defendants may have concealed issues, courts should apply the rule with flexibility. *Id.* Here, even when viewing Rule 9(b) flexibly, Plaintiff's alternative arguments do not satisfy this standard. First, Honda issued the TSB seven months after he purchased his car; however, Plaintiff has failed to present any competent evidence that plausibly infers that Honda was aware of this defect prior to his purchase. This issue also belies Plaintiff's quality assurance metrics argument. As such, because Plaintiff has failed to adequately demonstrate that Honda had knowledge or notice of the starter defect, Count I is dismissed.

*2. Common Law Fraud*

Defendants also seek dismissal of Count IV of Plaintiff's Complaint, which alleges common law fraud, since he has failed to demonstrate that Defendants were aware of the defect at the time that Plaintiff purchased his vehicle. "Under New Jersey law, the elements of common law fraud are: '(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4)

7

reasonable reliance thereon by the other person; and (5) resulting damages.'" *Virginia Sur. Co. v. Macedo*, No. 08-5586, 2011 U.S. Dist. LEXIS 49077, at *55-56 (D.N.J. May 6, 2011) (quoting *Banco Popular N. Am. v. Gandi*, 876 A.2d 252 (N.J. Sup. Ct. 2005)). For the reasons discussed above, because Plaintiff has failed to demonstrate that Honda had knowledge of the defect, Count IV will be dismissed.

B.     **Count II (Breach of Express Warranty)**

Honda argues that Plaintiff's breach of express warranty claim fails since: (1) Plaintiff did not comply with pre-suit notice requirements; (2) the warranty expired prior to the manifestation of the defect; and (3) the terms of the warranty were not unconscionable. The Court addresses each argument in turn.

First, in New Jersey, a buyer seeking to assert a breach of express warranty must first notify the seller of the breach. N.J.S.A. § 12A:2-607(3)(a) ("the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy"). "The notification . . . need only be such as informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation." *Id.*, Comment 4. This notice requirement is a condition precedent to alleging a breach of warranty. *See JOC Inc. v. ExxonMobil Oil Corp.*, No. 08-5344, 2013 U.S. Dist. LEXIS 200243, at *7 (D.N.J. Jan. 18, 2013) (quoting *Caparrelli v. Rolling Greens, Inc.*, 190 A.2d 369, 373 (N.J. Sup. Ct. 1963)). However, "[p]re-suit notice is not required when the action is brought against a remote manufacturer and/or seller." *In re Volkswagen Timing Chain Prod. Liab. Litig.*, No. 16-2765, 2017 U.S. Dist. LEXIS, at *34-37 (D.N.J. May 8, 2017); *Strzakowlski v. GMC*, No. 4-4740, 2005 U.S. Dist. LEXIS 18111, at *9-14 (D.N.J. Aug. 16, 2005) (holding that New Jersey does not require

notice manufacturer and, if anything, filing a complaint would suffice). Here, since Honda was not the direct seller of Plaintiff's vehicle, Honda's notice argument is misplaced.

Second, "[u]nder New Jersey law, in order to state a claim for breach of express warranty, Plaintiffs must properly allege: (1) that Defendant made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description." *Arlandson v. Hartz Mt. Corp.*, 792 F. Supp. 2d 691, 706 (D.N.J. 2011). "[F]or statute of limitations purposes, the breach of the warranty occurs when the defect manifests itself, not when the defect first 'exists.'" *Gotthelf*, 525 F. App'x at 105 (quoting *Poli v. DaimlerChrysler Corp.*, 793 A.2d 104, 107 (N.J. Super. Ct. App. Div. 2002)). Here, Plaintiff did not experience starter issues until the warranty period had expired (three years old and had over 40,000 miles). Therefore, because Plaintiff alleges that the defect manifested itself outside the warranty period, he does not state a valid claim for breach of express warranty. *See id.* at 106.

Finally, as an alternative argument, Plaintiff contends that Honda's warranty limitation was unconscionable. Specifically, Plaintiff asserts, "Defendants' warranty limitation is unenforceable because they knowingly sold a defective product without informing consumers about the manufacturing defect." (FAC at ¶ 93). The general rule is that breach of warranty claims cannot be based on a defect that first manifests itself after the express warranty has expired. *See Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 616 (3d Cir. 1995) (quoting *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 250 (2d Cir. 1986)). In *Henderson v. Volvo Cars of N. Am. LLC*, No. 09-4146, 2010 U.S. Dist. LEXIS 73624 (D.N.J. July 21, 2010), Judge Cavanaugh held that a manufacturer's knowledge that a part may ultimately fail does not, alone, make a time/mileage limitation unconscionable. *Id.* at *26; *see also Alban v. BMW of N. Am., LLC*, No.

09-5398, 2011 U.S. Dist. LEXIS 26754 (D.N.J. March 15, 2011).  However, where the plaintiff has alleged that the manufacturer has knowingly manipulated the warranty terms to avoid coverage, courts in this district have been more inclined to find the warranty unconscionable. *See In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 U.S. Dist. LEXIS, at *34-37; *Skeen v. BMW of N. Am., LLC*, No. 13-1531, 2014 U.S. Dist. LEXIS 9256, at *41-42 (D.N.J. Jan. 24, 2014).

Here, the Court finds fatal Plaintiff's failure to allege any facts demonstrating Defendants' manipulation of warranty coverage to avoid paying for replacement parts.  As discussed above, the record fails to support Plaintiff's claim that Honda had knowledge of the defect prior to his purchase; as such, it follows that Honda could not have manipulated warranty coverage for a defect it did know existed.  Therefore, since Plaintiff has failed to demonstrate that the limited warranty was unconscionable, Honda's Motion to Dismiss Count II will be granted.

### C. Count III (Breach of Implied Warranty of Merchantability)

Honda next moves to dismiss Plaintiff's claim for breach of the implied warranty of merchantability. Plaintiff contends that Honda breached its implied warranty of merchantability, since the Class Vehicles "were not in merchantable condition and are not fit for the ordinary purpose for which cars are used." (FAC at ¶ 98).

"A warranty of merchantability is implied in every contract for the sale of goods." *Arlandson*, 792 F. Supp. 2d at 705.  "In order for the implied warranty of merchantability to be breached, the product at issue must have been defective or not fit for the ordinary purpose for which it was intended." *Id.* (citation omitted).  "For an automobile, the implied warranty of merchantability is breached only when a defect 'renders the vehicle unfit for its ordinary purpose of providing transportation for its owner.'" *Sheris v. Nissan N.A., Inc.*, No. 07-2516, 2008 U.S. Dist. LEXIS43664, at *16 (D.N.J. June 3, 2008) (citations omitted).

Putting aside the fact that the alleged defect was not discovered until after the term of the warranty, *see Duquesne Light Co.*, 66 F.3d at 616, Plaintiff nevertheless fails to demonstrate that his Accord was not merchantable. Although the defect purportedly required Plaintiff to turn the ignition repeatedly to start his vehicle, the vehicle nevertheless met is ordinary purpose of providing transportation for the owner. Therefore, since Plaintiff's complaint fails to demonstrate that his vehicle was unfit for purposes of driving, Honda's Motion to Dismiss Count III is granted.

**D.   Count V (Breach of the Duty of Good Faith and Fair Dealing)**

Plaintiff contends that Honda breached the covenant of good faith and fair dealing since it failed to notify Plaintiff and others of the defect and to properly repair this defect. (FAC at ¶ 107).

Under New Jersey law, every contract contains an implied covenant of good faith and fair dealing. *Sons of Thunder v. Borden, Inc.*, 690 A.2d 575, 587 (N.J. Sup. Ct. 1997). That is, "there is an implied covenant that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract'" *Id.* (citation omitted). "In order to state a claim for breach of the implied covenant, a plaintiff must allege that: (1) a contract exists between the plaintiff and the defendant; (2) the plaintiff performed under the terms of the contract [unless excused]; (3) the defendant engaged in conduct, apart from its contractual obligations, without good faith and for the purpose of depriving the plaintiff of the rights and benefits under the contract; and (4) the defendant's conduct caused the plaintiff to suffer injury, damage, loss or harm." *TBI Unlimited, LLC v. Clear Cut Lawn Decisions, LLC*, No. 12-3355, 2014 U.S. Dist. LEXIS 107756, at *7 (D.N.J. Aug. 5, 2014) (citing *Wade v. Kessler Inst.*, 778 A.2d 580, 586 (N.J. Super. Ct. App. Div. 2001), *aff'd as modified*, 798 A.2d 1251 (N.J. Sup. Ct. 2002)). In order to demonstrate that a defendant has breached this covenant, the plaintiff must demonstrate "that a defendant has acted with bad motive or intention." *Cargill Global Trading v. Applied Dev.*

*Co.*, 706 F. Supp. 2d 563, 580 (D.N.J. 2010). "A plaintiff must 'provide evidence sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties." *Id.* (quoting 23 Richard A. Lord, Williston on Contracts § 63:22 at 513-14 (4th ed. 2009)).

Here, the FAC alleges, "Defendants acted in bad faith and/or with a malicious motive to deny Plaintiff . . . some benefit of the bargain." (FAC at ¶ 108). However, Plaintiff fails to provide any factual support for this assertion, he does not identify any particular conduct by Honda that demonstrated bad faith or malicious motive. Nor does Plaintiff provide any facts for which this Court could possibly infer such motive or conduct. Simply put, Plaintiff presents nothing more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 679. Therefore, Honda's Motion to Dismiss Count V will be granted.

**E.    Count VI (Unjust Enrichment)**

Defendants seek to dismiss Plaintiff's unjust enrichment claim, since a direct relationship between Plaintiffs and Defendants does not exist. This Court agrees. "To establish a claim for unjust enrichment, Plaintiff must show both that the defendant received a benefit and that retention of that benefit without payment would be unjust." *Stewart v. Beam Global Spirits & Wine, Inc.*, 877 F. Supp. 2d 192, 196 (D.N.J. 2012). Because unjust enrichment is based on contract principles, not tort, "there must be a direct relationship between the parties." *Bedi v. BMW of N.Am., LLC*, No. 15-1898, 2016 U.S. Dist. LEXIS 9365, at *15 (D.N.J. Jan. 27, 2016); *Pappalarado v. Combat Sports, Inc.*, No. 11-1320, 2011 U.S. Dist. LEXIS 147902, at *31 (D.N.J. Dec. 23, 2011) ("New Jersey law does not recognize unjust enrichment as an independent tort cause of action.").

Here, no direct relationship has been alleged and Plaintiff, in their Brief in Opposition, does not contest this. According to the FAC, Plaintiff purchased his vehicle from an authorized Honda retailer, not Honda. As such, no direct relationship has been demonstrated and, therefore, Plaintiff has not stated a claim for unjust enrichment. *See Bedi*, 2016 U.S. Dis. LEXIS 9365, at *14-16 (finding no direct relationship between the defendant car manufacturer and the plaintiff, where the plaintiff purchased his vehicle from a retailer, not the manufacturer). Therefore, this Court will grant Honda's Motion to Dismiss Count IV.

**F.     Improper Group Pleading**

Finally, Honda briefly contends that Plaintiff's entire complaint should be dismissed for improper group pleading under Fed. R. Civ. P. 8. Specifically, Honda claims that Plaintiff lumps all three entities together without identifying what each individual defendant allegedly did. Rule 8(a) states that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "Courts in this district generally agree that this type of 'group pleading' does not satisfy Rule 8, because it does not place Defendants on notice of the claims against each of them." *Sheeran v. Blyth Shipholding S.A.*, No. 14-5482, 2015 U.S. Dist. LEXIS 168019, at *8 (D.N.J. Dec. 16, 2015) (listing cases).

This Court's recent decision in *In re Volkswagen Timing Chain* is factually analogous to the present issue. In *Volkswagen Timing Chain*, the defendants sought dismissal of plaintiffs' entire complaint since the complaint combined "separate named defendant entities under the name 'Defendants.'" 2017 U.S. Dist. LEXIS 70299, at *28. The Court was unpersuaded, finding that Plaintiffs made sufficiently particularized allegations against each defendant. *Id.* at *29. Moreover, given the defendant's "complex corporate structure," the Court found it reasonable that the plaintiffs referred to the defendants collectively, "Plaintiffs cannot be expected to know the

13

exact corporate structure and degree of each Defendant's involvement, at this stage in the litigation and prior to discovery." *Id.* at *30 (citing *Weske v. Samsung Elecs., Am., Inc.*, 934 F. Supp. 2d 698, 708 (D.N.J. 2013) (noting that courts should apply a relaxed pleading standard when specific information is within the defendant's exclusive knowledge or control)).

Here, the FAC identifies each Defendant individually, describing each Defendant's principal place of business and the overall corporate structure of their businesses. (FAC at ¶¶ 25-31). Although the FAC does not differentiate between the three Honda-related entities, it nevertheless made them aware of the allegations made and who they pertain to. In its Brief in Support, Honda states, "[American Honda North America, Inc.] is the only proper party to this lawsuit. . . . AHM is the distributor of Honda vehicles sold or leased in the United States, and also administers the limited, written warranties that come with every new Honda vehicle." (Def Brief in Supp. at 2 n.1). As such, Honda should not be heard on the purported harm it experiences from this group pleading, since it has been placed on sufficient notice to defend the claims alleged against it. Therefore, while the FAC could have made more particularized allegations against each individual defendant, given the early stage of this litigation and the corporate structure of Honda's business, the Complaint satisfies Rule 8. As such, Honda's Motion to Dismiss based on improper group pleading is denied.

<u>Conclusion</u>

Having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented, and for good cause shown, and for all of the foregoing reasons,

## ORDER

IT IS on this 9th day of November, 2017,

**ORDERED** that Honda's Motion to Dismiss is **GRANTED** without prejudice; and it is further

**ORDERED** that Plaintiff may amend the Complaint within thirty (30) days.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.